## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

WALTER E. RYAN, JR., )
)
    Plaintiff, )
)     No. O4.3888 mᒍ ᗡ ᒐ᠋Gᒐ
    v. )
)
ST. PAUL TRAVELERS COMPANIES, )     **CLASS ACTION COMPLAINT**
INC., ROBERT L. LIPP, JAY S. FISHMAN, )     **FOR VIOLATION OF THE**
JAY S. BENET, JOHN A. MACCOLL, )     **FEDERAL SECURITIES LAWS**
HOWARD P. BERKOWITZ, KENNETH )
J. BIALKIN, LESLIE D. DISHAROON, )
MERYL D. HARTZBAND, BLYTHE J. )     **JURY TRIAL DEMANDED**
MCGARVIE, CLARENCE OTIS, JR., )
JEFFREY M. PEEK, NANCY A. ROSEMAN, )
CHARLES W. SCHARF, FRANK J. TASCO, )
LAURIE J. THOMSEN, CAROLYN HOGAN )
BYRD, JOHN H. DASBURG, JANET M. )
DOLAN, KENNETH M. DUBERSTEIN, )
LAWRENCE G. GRAEV, THOMAS R. )
HODGSON, WILLIAM H. KLING, JAMES A. )
LAWRENCE, GLEN D. NELSON, GORDON )
M. SPRENGER, THOMAS A. BRADLEY, and )
JOHN C. TREACY, )
)
    Defendants. )

---

## CLASS ACTION COMPLAINT

    Plaintiff, Walter E. Ryan, Jr., individually and as a representative of a class of all persons

similarly situated, by his attorneys, KRISLOV AND ASSOCIATES, LTD., and for this class

action complaint against St. Paul Travelers Cos. ("St. Paul Travelers") and certain current and/or

former officers and directors of St. Paul Travelers, and former officers and directors of St. Paul

Travelers' predecessor companies, St. Paul Companies, Inc. ("St. Paul") and Travelers Property

Casualty Corp. ("Travelers"), allege the following, based upon Plaintiff's personal knowledge

1

SCANNED

AUG 2 4 2004

U.S. DISTRICT COURT MPLS

and the investigation of Plaintiffs' counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by St. Paul Travelers and its predecessors, and media reports about the Companies. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE CASE

1.     This is a class action brought by former shareholders of Travelers in connection with Defendants' failure to disclose material facts in a Registration Statement and Proxy/Prospectus that was issued to Travelers shareholders regarding the April 1, 2004 merger of St. Paul and Travelers, which was touted as a "merger of equals" and which formed the entity named St. Paul Travelers Companies, Inc. (the "Merger").

2.     On November 16, 2003, officers and directors of St. Paul and Travelers signed an agreement to merge the two companies, and, on the next day, issued a joint press release announcing the proposed transaction.

3.     On February 13, 2004, the Defendants filed with the SEC a Registration Statement on Form S-4/A which incorporated Joint Proxy Statements and a Prospectus ("Registration Statement" or "Registration Statement and Proxy/Prospectus"), which set forth the terms of the Merger and the recommendations of management and the boards of directors of both companies urging shareholders to vote in favor of the deal.

4.     Contained within the Registration Statement, among other things, were financial statements and related information of both Travelers and St. Paul. As property casualty insurance companies, the most significant expense and liability item reported on the financial statements of these companies is the amount of reserves recorded for expected losses and claims.

2

5.       The Registration Statement reported that St. Paul would be using the accounting policies of Travelers for reporting its assets and liabilities in the new combined entity.  In connection with showing Travelers shareholders how the two companies would appear as combined, Defendants set forth a *pro forma* Condensed Combined Income Statement and Balance Sheet.  In compiling the *pro forma* financial statements, the Defendants aggregated the two companies' financial information and adjusted for certain items.  With respect to the reserve account, Defendants represented within the *pro forma* that the two companies would be able to reduce overall reserves by $720 million, in essence, representing a benefit to the combined entity and its shareholders.

6.       On March 19, 2004, shareholder meetings were held for both St. Paul and Travelers shareholders to vote on the proposed Merger.

7.       On April 1, 2004, the merger was consummated and the two companies merged to form St. Paul Travelers.

8.       Approximately four months after the Merger, the Company announced that it would take a $1.625 billion charge to its reserves in its second quarter 2004, creating a net loss in the range of $275 million to $300 million, or $0.42 to $0.45 per basic and diluted share.  This announcement was a vast departure from the $720 million savings in overall reserves that Defendants represented to Travelers shareholders in the Registration Statement.

9.       In its announcement, Defendants represented that the $1.625 billion reserve adjustment was attributed to St. Paul's financial condition and its conversion to Travelers' method of accounting for reserves.  This charge, or the need for it, was a material omission in the Registration Statement which caused Plaintiff and Class Members to suffer damages as a result.

3

## JURISDICTION AND VENUE

10.    Jurisdiction.  This court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act [ 15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. §§ 78a-78jj] and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.    Venue.  Venue in this case is proper in the District of Minnesota pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and 29 U.S.C. § 1391(b).  Acts giving rise to the violations of law complained of herein, including Defendants' failure to disclose material information, took place in the District of Minnesota.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails, telephone communications, and the facilities of national securities exchanges.

## PARTIES

13.    Plaintiff, Walter E. Ryan, Jr. ("Plaintiff"), prior to the Merger, held 2,808 shares of Travelers Class A common stock and 5,769 shares of Travelers Class B common  stock. Plaintiff received the Registration Statement and Joint Proxy/Prospectus issued in connection with the Merger, in which all of his Travelers Class A and B shares were exchanged for 3,716 shares of St. Paul Travelers Companies, Inc. common stock, as set forth in his attached Certification.

14.    Defendant, St. Paul Travelers Companies, Inc. ("St. Paul Travelers" or the "Company"), is a Minnesota corporation, headquartered in St. Paul, Minnesota.

4

15.     St. Paul Travelers was formed on April 1, 2004, through the merger of St. Paul and Travelers. St. Paul was a Minnesota corporation with its headquarters located in St. Paul, Minnesota. Travelers was a Delaware corporation with its headquarters located in Hartford, Connecticut.

16.     The Company is publicly traded on the New York Stock Exchange under the Ticker Symbol "STA". St. Paul Travelers operates a diverse line of insurance and financial services businesses, including commercial property-casualty insurance, personal property-casualty insurance and asset management services. St. Paul Travelers is the nation's second largest property-casualty insurer and one of the largest financial services firms.

17.     Defendant Robert I. Lipp ("Lipp") is Chairman of St. Paul Travelers. Prior to the Merger, Mr. Lipp was the Chairman and Chief Executive Officer of Travelers. Lipp signed the Registration Statement and Proxy/Prospectus.

18.     Defendant Jay S. Fishman ("Fishman") is Chief Executive Officer of St. Paul Travelers. Before the Merger, Fishman was Chairman, President, Chief Executive Officer and a Director of St. Paul. Fishman signed the Registration Statement and Proxy/Prospectus.

19.     Defendant Jay S. Benet ("Benet") is the Chief Financial Officer of St. Paul Travelers. Prior the Merger, Benet served as Chief Financial Officer of Travelers and had held that position since 2002.

20.     Defendant John A. MacColl ("MacColl") is Vice-Chairman and General Counsel of St. Paul Travelers. Prior to the Merger, MacColl was General Counsel for St. Paul and was a Director of St. Paul since 2002. MacColl signed the Registration Statement and Proxy/Prospectus.

5

21.     Defendant Howard P. Berkowitz ("Berkowitz") is a Director of St. Paul Travelers. Prior to the Merger, Berkowitz was a Director of Travelers since 2002.

22.     Defendant Kenneth J. Bialkin ("Bialkin") is a Director of St. Paul Travelers. Prior to the Merger, Bialkin was a Director of Travelers since 2002. Bialkin is also a partner at Skadden, Arps, Slate, Meagher, & Flom LLP.

23.     Defendant, Leslie B. Disharoon ("Disharoon") is a Director of St. Paul Travelers. Prior to the Merger, Disharoon was a Director of Travelers since 2002. Disharoon was previously Chairman of the Board, President and Chief Executive Officer of Monumental Corporation (an insurance holding company).

24.     Defendant Meryl D. Hartzband ("Hartzband") is a Director of St. Paul Travelers. Prior to the Merger, Hartzband was a Director of Travelers since 2002. Hartzband is a Senior Principal and Investment Director of MMC Capital, Inc., a subsidiary of March & McLennan Companies, Inc.

25.     Defendant Blythe J. McGarvie ("McGarvie") is a Director of St. Paul Travelers. Prior to the Merger, McGarvie was a Director of Travelers since 2003. McGarvie is President of Leadership for International Finance, a private business consulting firm.

26.     Defendant Clarence Otis, Jr. ("Otis") is a Director of St. Paul Travelers. Prior to the Merger, Otis was a Director of Travelers since 2002. Otis is also the Executive Vice President of Darden Restaurants, Inc. and President of its Smokey Bones Restaurants Division.

27.     Defendant Jeffrey M. Peek ("Peek") is a Director of St. Paul Travelers. Prior to the Merger, Peek was a Director of Travelers since 2002. Peek is also President and Chief Operating Officer and a Director of CIT Group Inc.

6

28.      Defendant Nancy A. Roseman ("Roseman") is a Director of St. Paul Travelers. Prior to the Merger, Roseman was a Director of Travelers since 2002. Roseman is the Dean of Williams College.

29.      Defendant, Charles W. Scharf ("Scharf") is a Director of St. Paul Travelers. Prior to the Merger, Scharf was a Director of Travelers since 2002. Scharf is the Chief Executive Officer of Bank One's Retail Division.

30.      Defendant Frank J. Tasco ("Tasco") is a Director of St. Paul Travelers. Prior to the Merger, Tasco was a Director of Travelers since 2002. Tasco is the retired Chairman of the Board and Chief Executive Officer of Marsh & McLennan Companies, Inc.

31.      Defendant Laurie J. Thomsen ("Thomsen") is a Director of St. Paul Travelers. Prior to the Merger, Thomsen was a Director of Travelers since 2002. Thomsen is also a Venture Partner of Prism Venture Partners.

32.      Defendant Carolyn Hogan Byrd ("Byrd") is a Director of St. Paul Travelers. Prior to the Merger, Byrd was a Director of St. Paul since 2001. Byrd is also Chairman and Chief Executive Officer of GlobalTech Financial, LLC, a Georgia company which provides outsourced processing, operations, and consulting services to clients and is the sole provider of loans and lease processing services to Coca-Cola to extend to its bottlers, customers, and suppliers. Byrd signed the Registration Statement and Proxy/Prospectus.

33.      Defendant, John H. Dasburg ("Dasburg") is a Director of St. Paul Travelers. Prior to the Merger, Dasburg was a Director of St. Paul since 1994. Dasburg is also Chairman, President, and Co-owner of ASTAR Air Cargo, Inc., an air cargo services company. Dasburg signed the Registration Statement and Proxy/Prospectus.

7

34.     Defendant Janet M. Dolan ("Dolan"), is a Director of St. Paul Travelers.  Prior to the Merger, Dolan was a Director of St. Paul since 2001.  Dolan is also President and Chief Executive Officer of Tennant Company, which manufactures non-residential floor maintenance equipment, floor coatings, and other related products.  Dolan signed the Registration Statement and Proxy/Prospectus.

35.     Defendant Kenneth M. Duberstein ("Duberstein") is a Director of St. Paul Travelers.  Prior to the Merger, Duberstein was a Director of St. Paul since 1998.  Duberstein is also Chairman and Chief Executive Officer of The Duberstein Group, Inc.  Duberstein signed the Registration Statement and Proxy/Prospectus.

36.     Defendant Lawrence G. Graev ("Graev") is a Director of St. Paul Travelers.  Prior to the Merger, Graev was a Director of St. Paul since 2002.  Graev is also Chairman and Chief Executive Officer of The GlenRock Group, LLC, which invests in private equity opportunities and provides management assistance to the leadership and boards of a variety of businesses.  Graev signed the Registration Statement and Proxy/Prospectus.

37.     Defendant Thomas R. Hodgson ("Hodgson") is a Director of St. Paul Travelers.  Prior to the Merger, Hodgson was a Director of St. Paul since 1997.  Hodgson is also the retired President and Chief Operating Officer of Abbott Laboratories.  Hodgson signed the Registration Statement and Proxy/Prospectus.

38.     Defendant William H. Kling ("Kling") is a Director of St. Paul Travelers.  Prior to the Merger, Kling was a Director of St. Paul since 1989.  Kling is also President and CEO of American Public Media Group.  Kling signed the Registration Statement and Proxy/Prospectus.

39.     Defendant James A. Lawrence ("Lawrence") is a Director of St. Paul Travelers.  Prior to the Merger, Lawrence was a Director of St. Paul since 2003.  Lawrence is also the

8

Executive Vice President and Chief Financial Officer of General Mills, Inc. Lawrence signed the Registration Statement and Proxy/Prospectus.

40.     Defendant Glen D. Nelson, M.D. ("Nelson") is a Director of St. Paul Travelers. Prior to the Merger, Nelson was a Director of St. Paul since 1992. Nelson is the retired Vice Chairman of Medtronic, Inc., which manufactures biomedical devices. Nelson signed the Registration Statement and Proxy/Prospectus.

41.     Defendant Gordon M. Sprenger ("Sprenger") is a Director of St. Paul Travelers. Prior to the Merger, Sprenger was a Director of St. Paul since 1995. Sprenger is the retired President and Chief Executive Officer of Allina Health System, Inc. Sprenger signed the Registration Statement and Proxy/Prospectus.

42.     Defendant Thomas A. Bradley ("Bradley") was Executive Vice-President and Chief Financial Officer of St. Paul prior to the Merger. Bradley signed the Registration Statement and Proxy/Prospectus.

43.     Defendant John C. Treacy ("Treacy") was Vice-President and Corporate Controller (the Principal Accounting Officer) of St. Paul prior to the Merger. Treacy signed the Registration Statement and Proxy/Prospectus.

44.     Defendants Lipp, Fishman, Benet, MacColl, Berkowitz, Bialkin, Disharoon, Hartzband, McGarvie, Otis, Peek, Roseman, Scharf, Tasco, Thomsen, Byrd, Dasburg, Dolan, Duberstein, Graev, Hodgson, Kling, Lawrence, Nelson, Sprenger, Bradley and Treacy are referred to herein as the "Individual Defendants."

45.     <u>Individual Defendants Were Control Persons</u>: The Individual Defendants, as officers and directors of the Company and its predecessors, were controlling persons of the Company and its predecessors within the meaning of Section 15 of the Securities Act of 1933

9

and Section 20 of the Exchange Act. By reason of their positions with the Company and its

predecessors, they were able to and did, directly or indirectly, in whole or in material part,

control the content of the Registration Statement and Proxy/Prospectus issued by or on behalf of

the Companies. The Individual Defendants participated in the drafting, preparation and/or

approval of the Registration Statement and Proxy/Prospectus complained of herein, including the

materially false and misleading statements identified herein, and were aware of or recklessly

disregarded the misstatements contained therein and omissions therefrom, and their materially

false and misleading nature.

     46.     <u>Individual Defendants Had Access To Undisclosed Information</u>:

     (a)     By reason of their positions with St. Paul and/or Travelers, the

Individual Defendants had access to the adverse undisclosed information about St. Paul's

business, operations, products, operational trends, financial statements, markets and present and

future business prospects via access to internal corporate documents (including the Company's

and its predecessors' operating plans, budgets and forecasts and reports of actual operations

compared thereto), conversations and connections with other corporate officers and employees,

attendance at management and Board of Directors meetings and committees thereof and via

reports and other information provided to them in connection therewith. Each Individual

Defendant was provided with copies of the documents alleged herein to be misleading prior to or

shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or

cause them to be corrected. Accordingly, each Individual Defendant is responsible for the

accuracy of the public reports and releases detailed herein and is therefore primarily liable for the

representations contained therein. As a result , the Individual Defendants each had a duty to

disseminate promptly accurate and truthful information with respect to the Company's financial

condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statement that had become materially misleading or untrue, so that the value of St. Paul's publicly-traded securities would be based upon truthful and accurate information. Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

47.     Group Pleading Applies: It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Registration Statement and Proxy/Prospectus as alleged herein are the collective actions of the narrowly defined group of Individual Defendants identified above.

48.     Each Individual Defendant Is Primarily Liable: Each Individual Defendant is primarily liable as a signatory or participant in the issuance of the Registration Statement and Proxy/Prospectus, which contained materially false and misleading statements and omitted material information, which was distributed to Plaintiff and other Class Members seeking their approval of the Merger. The Individual Defendants' misconduct caused Plaintiff and other members of the Class to exchange their shares of Travelers for shares of St. Paul Travelers at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

49.     Class Definition. This action is a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all holders of Travelers Class A and Class B common stock who exchanged their shares of Travelers for shares of St. Paul Travelers in connection with the April 1, 2004 Merger of St. Paul and Travelers, which formed St. Paul Travelers.

11

50.    Prerequisites for a Class Action. This shareholder case meets all of the prerequisites for certification as a class action under the federal securities laws and state breach of fiduciary duty laws.

51.    Numerosity. More than 508 million shares of Travelers Class A common stock and more than 499 million shares of Travelers Class B common stock were outstanding just prior to the effective date of the Merger. The members of the class for whose benefit this action is brought are dispersed throughout the United States, making joinder of all class members impracticable.

52.    Typicality and Adequacy of Named Plaintiff. Plaintiff's claims are typical of the claims of the other members of the class he seeks to represent. Among other things, both Plaintiff and members of the class sustained damages as a result of the Proxy/Prospectus issued in connection with the Merger omitting material facts about the Merger. Plaintiff and all Class Members owned shares of Travelers stock prior to the Merger and exchanged those Travelers shares for St. Paul Travelers shares. Named Plaintiff has no unique interest in conflict with the interest of class members, and has no other interests which will hinder his prosecution of this case or otherwise disqualify him from representing the class.

53.    Common Questions of Law or Fact. There are multiple common questions of law or fact which will resolve the interests of all Class Members. Among the questions of law and fact which are common to the class and predominate over questions affecting any individual class member are, *inter alia*, the following:

> (a)    whether Defendants failed to disclose material information to the Class Members regarding their change in accounting for reserves used by St. Paul;

12

      (b)     whether the failure to disclose the material information to the Class

            Members constitutes a violation of the federal securities laws;

      (c)     whether the alleged violators damaged the Plaintiff and Class Members,

            and the proper measure of those damages; and

      (d)     whether the Individual Defendants owed fiduciary duties to plaintiffs and,

            if so, whether they breached those duties.

54.    Adequacy of Counsel. Undersigned counsel are well experienced in complex litigation, the prosecution of class actions generally, and the prosecution of securities class actions in particular. Counsel have previously been certified as class counsel in both federal and state class actions and will vigorously represent and pursue the interests of Class Members.

## SUBSTANTIVE ALLEGATIONS

55.    On November 17, 2003, St. Paul and Travelers announced that they had signed a definitive merger agreement to create St. Paul Travelers Companies, subject to regulatory approvals and the approval of both St. Paul and Travelers shareholders.

56.    The terms of the merger agreement were set forth in a Registration Statement, filed on Form S-4 with the SEC and incorporated a Joint Proxy-Prospectus (the "Registration Statement"). The Registration Statement was filed with the SEC on February 13, 2004, and issued to St. Paul and Travelers stockholders on or about the same date.

57.    The Merger was structured as a tax-free, stock-for-stock merger, in which holders of Travelers Class A and Class B common stock would receive, for each share, 0.4334 shares of St. Paul Travelers common shares. St. Paul shareholders would continue to hold the same number of St. Paul shares but under the new company name of St. Paul Travelers.

58.    According to the Registration Statement, following the completion of the Merger,

13

former Travelers shareholders would own approximately 66% of the outstanding common stock of the combined company; and former St. Paul shareholders would own the remaining 34%.

59.     For accounting purposes, the Merger was to be accounted for as a reverse acquisition with Travelers as the accounting acquirer. As such, St. Paul Travelers was to account for the transaction as a purchase business combination, using Travelers historical financial information and accounting policies and applying fair value estimates to the acquired assets, liabilities and commitments of St. Paul as of the date of the transaction.

60.     A significant component of St. Paul's financial reporting was its accounting for reserves. Property and casualty loss reserves are established to account for the estimated ultimate unpaid costs of loss and loss adjustment expenses for claims that have been reported but not yet settled and claims that have been incurred but not reported.

61.     As of September 30, 2003, St. Paul recorded reserves of $22.389 billion on its balance sheet.

62.     In the Registration Statement, Defendants set forth a *pro forma* Condensed Combined Balance Sheet of Travelers and St. Paul, which included an adjustment to the reserve account, showing that St. Paul Traveler's reserves would be reduced by $720 million, if the two entities combined.

63.     On or about April 1, 2004, the Merger was completed.

64.     Less than four months later, on July 23, 2004, St. Paul Travelers announced that it would be making "certain reserve valuation adjustments" totaling $1.625 billion. This revelation was an over $2.3 billion adverse adjustment to the Company's reserves compared to what Defendants represented would be adjusted in the Registration Statement

14

65.    The July 23, 2004 announcement described the $1.625 billion reserve charge as follows ($ in millions, pre-tax):

| | | |
|---|---|---|
| (1) | Adjustments to conform St. Paul to Travelers historic accounting and actuarial methods: | $1,170 |
| (2) | Net strengthening of reserves due to financial condition of a construction contractor: | 250 |
| (3) | Change in reinsurance recoverables due to commutation of specific reinsurance arrangements: | 150 |
| (4) | Net increase in other claims and claim adjustment expense reserves: | 50 |
| | TOTAL | $1,625 |

66.    The reserve adjustment is substantially, if not fully, attributable to St. Paul's previously reported reserves set forth in the Registration Statement.

67.    The July 23, 2004 announcement also stated that the Company had requested guidance from the SEC on how to account for the adjustments in light of the requirements of Statement of Financial Accounting Standards No. 141 ("FAS 141"), Business Combinations. Prior to the issuance of FAS 141, under certain circumstances, reserve valuation adjustments in a purchase business combination were recorded through the income statement.

68.    On August 2, 2004, the Company announced that it reached a conclusion on the accounting treatment for the $1.625 billion reserve adjustment, stating that it "will record the adjustment as a charge to the income statement in the second quarter 2004."

69.    On August 4, 2004, the *Wall Street Journal* issued an article titled "Travelers' Shareholders Get Caught In A Storm With St. Paul Acquisition." The *WSJ* article, referring to comment by Morgan Stanley, described the reserve adjustment as a "blockbuster reserve charge"

which "was about twice as large as analysts had been expecting," and which "has bitten

Travelers' stockholders badly."

70.    The *WSJ* article was critical of the Company's inability to identify and disclose

the substantial reserve charges sooner, especially since Defendant Fishman, the current CEO of

St. Paul Travelers, was CEO at St. Paul and had served as a top executive at both Citigroup and

Travelers.

71.    The *WSJ* article further explained that the Merger was likely motivated by

"solv[ing] succession issues at Travelers, without proper regard to shareholders."

72.    A lack of due diligence into the sufficiency of St. Paul's reserves, the need for an

adjustment and the actual effect the Merger and the impending reserve adjustment would have on

Travelers shareholders was shown in a conference call that the Company held to explain the

substantial charge. As set forth in the *WSJ* article, Defendant Benet conceded that:

> "We looked at the St. Paul book of business; we looked at the
> reserve profile. We knew, you know, what they were doing in the
> marketplace. ... We recognized that early on that there was a
> difference in some of the methodologies that would have to be
> addressed."

73.    In the same conference call, Defendant Fishman said: "It certainly would have

been nice to have dealt with this and got it, in a sense, behind us."

74.    Defendants' failure to have dealt with this reserve charge prior to the Merger is

made more surprising by St. Paul's record of reserve charges since Defendant Fishman arrived in

2001. The *WSJ* article reported that Morgan Stanley calculated that since the third quarter of

2001, "St. Paul has amassed $4.1 billion in reserve increases," which "amounts to a

flabbergasting 45% of book value at the close of 2001."

75.    Defendants' failure to disclose in the Registration Statement and

16

Proxy/Prospectus that they would be taking a $1.625 billion reserve charge to the Company's 2004 income statement was materially misleading and caused damage to Plaintiff and the Class.

## COUNT I

### Violations of Section 11 of the Securities Act Against St. Paul Travelers

76.    Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraph, as if fully set forth herein. This count is asserted against St. Paul Travelers for violations of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, on behalf of Plaintiff and other members of the Class who exchanged their Travelers common stock for St. Paul Travelers common stock in connection with the Merger, and pursuant to the Registration Statement and Proxy/Prospectus. Plaintiff's allegations herein are not grounded in or otherwise sounding in fraud.

77.    The Registration Statement and Proxy/Prospectus, and those documents and disclosures incorporated by reference therein, were materially false and misleading; omitted to state material facts necessary to make the statements made in the Registration Statement and Proxy/Prospectus, under the circumstances in which they were made, not misleading; and/or failed to disclose material facts. As detailed herein, the misrepresentations contained in, or the material facts omitted from, the Registration Statement and Proxy/Prospectus included, but were not limited to, the under-reserving of the surety reserve account; and the failure to disclose material information relating to the material change of accounting methodology resulting in an exorbitant $1.625 billion increase to the reserves and reduction in net income.

78.    St. Paul Travelers is the registrant for the shares issued pursuant to the Merger,

17

and filed the Registration Statement as the issuer of its common stock, as defined in Section 11(a)(5) of the Securities Act.

79.    St. Paul Travelers is the issuer of the common stock issued pursuant to the Registration Statement. As issuer of such common stock, St. Paul Travelers is liable to Plaintiff and the Class who exchanged Travelers common stock for St. Paul Travelers common stock in connection with the Merger, and pursuant to the Registration Statement and Proxy/Prospectus.

80.    The former Travelers shareholder Class each acquired St. Paul Travelers common stock issued pursuant to the Registration Statement and Proxy/Prospectus.

81.    At the time they acquired St. Paul Travelers' common stock pursuant to the Registration Statement and Proxy/Prospectus, none of the Travelers Shareholder Class knew, or by the exercise of reasonable care, could have known of the material misstatements and/or omissions alleged herein.

82.    This action was brought within three years after the discovery of the untrue statements and/or omissions and within five years after the St. Paul Travelers common stock was acquired in connection with the Merger.

83.    By reason of the foregoing, St. Paul Travelers violated Section 11 of the Securities Act and is liable to the Travelers shareholder Class, each of whom has been damaged by reason of such violation.

## COUNT II

### Violations of Section 11 of the Securities Act Against the Individual Defendants

84.    Plaintiff repeats and realleges each of the allegations set forth in the foregoing

18

paragraphs, as if fully set forth herein. This Count is asserted against the Individual Defendants for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of Travelers shareholders who exchanged their Travelers common stock for St. Paul Travelers common stock issued in connection with the Merger, and pursuant to the Registration Statement and the Proxy/Prospectus. Plaintiff's allegations herein are not grounded in or otherwise sounding in fraud.

85.    The Registration Statement and Proxy/Prospectus, and those documents and disclosures incorporated by reference therein, were materially false and misleading; omitted to state material facts necessary to make the statements made in the Registration Statement and Proxy/Prospectus, under the circumstances in which they were made, not misleading; and/or failed to disclose material facts. As detailed herein, the misrepresentations contained in, or the material facts omitted from, the Registration Statement and Proxy/Prospectus included, but were not limited to, the under-reserving of the surety reserve account and the failure to disclose material information relating to the material change of accounting methodology resulting in a exorbitant $1.625 billion increase in reserves.

86.    The Individual Defendants were responsible for the contents of the Registration Statement and Proxy/Prospectus and caused their filing with the SEC.

87.    The Individual St. Paul Defendants signed the Registration Statement and Proxy/Prospectus, consented to being named therein as Directors of St. Paul Travelers, and caused them to be prepared, filed with the SEC, and circulated to the public, including the Travelers Shareholder Class. The Individual Travelers Defendants had a substantial role in preparing the document and working out the details of the merger.

19

88.     None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements described herein, which were contained in the Registration Statement and Proxy/ Prospectus, were true, were without omission of any material facts, and/or were not misleading.

89.     The Travelers Shareholder Class each acquired St. Paul Travelers common stock issued pursuant to the Registration Statement and Proxy/Prospectus.

90.     At the time they acquired St. Paul Travelers common stock pursuant to the Registration Statement and Proxy/Prospectus, none of the Travelers Shareholder Class who exchanged their Travelers common stock for St. Paul Travelers common stock knew, or by the exercise of reasonable care could have known, of the facts concerning the material misstatements and/or omissions alleged herein.

91.     This action was brought within three years after the discovery of the untrue statements and/or omissions, and within five years after the St. Paul Travelers common stock was acquired in connection with the Merger.

92.     By the reason of the foregoing, the Individual Defendants violated Section 11 of the Securities Act and are liable to the Travelers Shareholder Class, each of whom has been damaged by reason of such violation.

### COUNT III

#### Violations of Section 12(a)(2) of the Securities Act Against St. Paul Travelers

93.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein. This Count is asserted against St. Paul Travelers for violations of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all

20

Travelers shareholders who exchanged their Travelers common stock for St. Paul Travelers common stock issued in connection with the Merger, and pursuant to the Registration Statement and the Proxy/Prospectus. Plaintiff's allegations herein are not grounded in or otherwise sounding in fraud.

94.    As set forth in the Registration Statement and Proxy/Prospectus, Travelers shareholders received 0.4334 shares of St. Paul Travelers common stock for each share of Travelers common stock they sold pursuant to the Merger. St. Paul Travelers, acting through employees and others, including, but not limited to, the Individual Defendants, solicited such exchanges through the preparation and dissemination of the Registration Statement and Proxy/Prospectus.

95.    The Registration Statement and Proxy/Prospectus contained untrue statements of material facts, and concealed and failed to disclose material facts, as detailed above. St. Paul Travelers, and its predecessor Travelers, its employees and agents, owed the Travelers Shareholder Class the duty to make a reasonable and diligent investigation of the statement contained in the Registration Statement and Proxy/Prospectus to ensure that such statements were true and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. St. Paul Travelers, and its predecessor Travelers, in the exercise of reasonable care by its employees and agents, should have known of the misstatements and omissions contained in the Registration Statement and Proxy/Prospectus, as set forth above.

96.    At the time they exchanged their Travelers common stock for St. Paul Travelers

21

common stock issued pursuant to the Registration Statement and Proxy/Prospectus, the Travelers

Shareholder Class did not know, nor in the exercise of reasonable diligence, could not have

known, of the material misstatements and/or omissions alleged herein.

97.     By reason of the conduct alleged herein, St. Paul Travelers violated Section

12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, the Travelers

Shareholder Class sustained substantial damages in connection with their exchange of Travelers

common stock for shares of St. Paul Travelers common stock.  Accordingly, the Travelers

shareholder class who acquired St. Paul common stock issued pursuant to the Registration

Statement and Proxy/Prospectus were harmed, and seek damages to the extent provided by law.

## COUNT IV

## Violations of Section 15 of the Securities Act Against Individual Defendants

98.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing

paragraphs, as if fully set forth herein.  This Court is brought pursuant to Section 15 of the

Securities Act on behalf of the Plaintiff and members of the proposed class who acquired St.

Paul Travelers common stock in connection with the Merger.

99.     Each of the Individual Defendants was a controlling person of the Company

within the meaning of Section 15 of the Securities Act at the time of the Merger.  At the time

Travelers was merger with and into St. Paul, and the Registration Statement and

Proxy/Prospectus were filed with the SEC, each of the Individual Defendants had the power and

authority to cause the Company to engage in the wrongful conduct complained of herein,

including the issuance of the false and misleading Registration Statement and Proxy/Prospectus.

100.     None of the Individual Defendants made a reasonable investigation or possessed

22

reasonable grounds for the belief that the statements contained in the Registration Statement and

Proxy/Prospectus were true and devoid of any omissions of material facts. Therefore, by reason

of their position of control over St. Paul Travelers, alleged herein, each of the Individual

Defendants is jointly and severally liable with, and to the same extent as St. Paul Travelers to the

Plaintiff and the other proposed class members as a result of the wrongful conduct alleged

herein.

## COUNT V

### Violations of Section 14(a) of the Exchange Act and Rule 14a-9
### Promulgated Thereunder Against All Defendants

101.    The Plaintiff repeats and realleges each of the allegations set forth in the

foregoing paragraphs, as if fully set forth herein. This Count is brought pursuant to Section 14(a)

of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 promulgated thereunder by the SEC

[17 C.F.R. §240.14a-9] on behalf of the Plaintiff and other members of the proposed class,

against St. Paul Travelers and the Individual Defendants, for violations of the Exchange Act and

Rule 14a-9 thereunder.  Plaintiff's allegations herein are not grounded in or otherwise sounding

in fraud.

102.    The Defendants named herein violated Section 14(a) of the Exchange Act and

Rule 14a-9 thereunder in that the defendants solicited proxies from the Plaintiff and the other

members of the proposed Class by means of a Proxy/Prospectus that contained statements which,

at the time and in the light of the circumstances in which they were made, were false and

misleading with respect to material facts, and omitted to state material facts necessary in order to

make the statements therein not false or misleading.

103.    As a result, the Plaintiff and the members of the proposed class were denied the

23

opportunity to make an informed decision in voting on the Merger, and received a smaller stake in the combined company than they otherwise would have had the information been disclosed.

104.   The Plaintiff and the other members of the proposed Class have suffered damages as a result of the Merger which was approved through the use of a proxy in violation of Section 14(a) of the Exchange Act and Rule 14-8 thereunder.

## COUNT VI

### Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

105.   Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

106.   This Count is brought pursuant to Section 20(a) of the 1934 Exchange Act against the Individual Defendants, except Bradley and Treacy who are not directors of the combined company.

107.   The Individual Defendants by virtue of their position, stock ownership, and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons of Travelers and St. Paul within the meaning of Section 20(a) of the 1934.

108.   The Individual Defendants had the power and influence and exercised the same to cause Travelers and St. Paul to engaged in the illegal conduct and practices complained of herein.

109.   By reason of the conduct alleged herein, the Individual Defendants are liable to Plaintiff and the other members of the proposed Class for the substantial damages which they suffered in connection with their exchange of Travelers common stock for St. Paul Travelers common stock.

24

## COUNT VII
## Breach of Fiduciary Duty

110.    Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

111.    By virtue of Plaintiff's exchange of Travelers shares for St. Paul Travelers shares in connection with the Merger, and the Defendants' positions as directors and/or officers of the Company and its predecessors, and because Plaintiff reposed trust and confidence in them, the Defendants owed to Plaintiff fiduciary duties of care, candor and loyalty of the highest good faith, integrity and fair dealing.

112.    Defendants who were Travelers directors and officers prior to the Merger were fiduciaries to the Travelers shareholder Class.

113.    Part of their fiduciary duties in connection with the Merger was to educate themselves regarding St. Paul's reserves and its accounting methodologies for calculating them. This was especially true in this case because the *pro forma* reduction in the combined companies reserves was a key point in the purpose of the Merger.

114.    In failing to ascertain the correct figure necessary for the combined reserves, or in failing to act to adjust the Merger ratio upon its discovery, or walk away from the Merger upon discovery that the touted reserve reductions would not be available or much less than anticipated, Defendants violated the duties of care they are required to follow.

115.    In taking and/or failing to take the actions heretofore alleged, Defendants violated their fiduciary obligations to Plaintiff.

116.    As a proximate result of Defendants' aforesaid misconduct, Plaintiffs were damaged.

25

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the other members of the class asserted herein, demand for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the class asserted herein;

B.    Certifying Plaintiff, Walter E. Ryan, Jr. as the representative of the Class;

C.    Declaring and determining that the defendants violated the federal securities laws and common law by reason of their conduct alleged herein;

D.    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all defendants for the damages sustained as a result of defendants' wrongdoing together with interest;

E.    Certifying Krislov and Associates, Ltd. as Lead Counsel for the Class;

F.    Awarding Plaintiff costs, expenses, and disbursements incurred in this action, including reasonable attorneys' and experts' fees; and

G.    Awarding Plaintiffs and the other members of the Class other and further relief as the Court may deem just and proper.

Dated: August 24, 2004

Respectfully submitted

**CHESTNUT & CAMBRONNE, P.A.**

By _____

Karl L.Cambronne #14321
3700 Piper Jaffray Tower
222 South 9th Street
Minneapolis, MN 55402
(612)339-7300
Fax (612)336-2940

Clinton A. Krislov
Jessica J. Mead
Michael R. Karnuth
Krislov & Associates, Ltd.
20 North Wacker Drive, Suite 1350
Chicago, IL 60601
(312)606-0500
Fax (312)606-0207

*Attorneys for Plaintiff*

*S:\WPDOCS\DP\St. Paul Travelers\Class Action Complaint.wpd*

## CERTIFICATION OF LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Walter E. Ryan, Jr., declare as follows:

1.      I have reviewed a copy of the complaint filed in this action.

2.      I did not purchase shares of Travelers Property Casualty Corp. Class A or Class B

("Travelers"), or exchange those shares for shares of St. Paul Travelers Company, Inc. common stock

("SPT"), the securities that are the subject of this action, at the direction of counsel or in order to

participate in any action arising under the Private Securities Litigation Reform Act (the "PSLRA").

3.      To the best of my knowledge, the following are the number of shares of Travelers

common stock that I held just prior to the April 2004 merger with St. Paul Companies (the "Merger"):

          Travelers Property Casualty Corp. New Class A:     2,808

          Travelers Property Casualty Corp. New Class B:     5,769

4.      After the Merger, I held a total of 3,716 shares of the merged entity, St. Paul Travelers

Company, Inc.

5.      I have not served or sought to serve as a representative party on behalf of a class during

the previous three years in an action brought under the federal securities laws, except the following:

          In Re: Safety-Kleen Rollins Shareholder Litig., 3:00-1343-CV-17 (D.S.C.)

          In Re: BankAmerica Corp. Sec. Litig., MDL No. 1264

6.      I will not accept any payment for serving as a representative party on behalf of a class

beyond my pro rata share of any recovery, except as ordered or approved by the Court.

7.      I am willing to serve as a lead plaintiff and representative party on behalf of a class,

including providing testimony at deposition and trial, if necessary.

8.      The matters stated in this certification are true to the best of my current knowledge,

information and belief.

7.    I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Executed this __11__ day of __AUG__, 2004, at __PALATINE , IL.__
                                              (City, State)

F:\CASES\St. Paul Travelers\Sworn Certification of Walter Ryan.wpd

-2-